We'll move on to our next case, Carhart-Halaska v. Carhart-Halaska. Mr. Cade. Thank you, Your Honor. May it please the Court. I'm here today to ask the Court to reverse the decision of the District Court for the Eastern District, Judge Stattmuller, and remand the case back for a stay to be issued. The rationale for issuing the stay is simple. There's litigation involving the same parties in Ozaukee County, which is the county just north of Milwaukee. Particularly in that case, all of the issues, including what was part of this judgment that Judge Stattmuller allowed to go through the enforcement of, is dealt with. In particular, one issue that I do want to raise, the lawsuit, the judgment itself, came from the District Court of Minnesota. And in that lawsuit, my client, Halaska, and Chris Halaska, sought to file a third-party complaint. Chris Carhart, who now owns the judgment, opposed it, saying, no, no, no, no, no. The only issue in Minnesota is dealing with whether there was a breach of this agreement with a dealer, MRO. That was it, and they said that, and I can cite to the specific record in the District Court for Minnesota. So he said, no, everything else should occur in Ozaukee County. Well, that's what happened. And then subsequently, once Mr. Carhart had taken all of the money out of the corporation, it was a two-person LLC, Carhart, Alaska. He takes all the money out. There's no money for the receiver. There's no money to operate. And the receiver says, I can't even pay the attorney to litigate in Minnesota. Take your judgment, because that issue has been raised in Ozaukee County. We'll treat it as a claim. And as a member, his LLC is a member. Look, you'll have to start over. This is an extremely complicated case. It is. And you will have to explain it in words of one syllable, not jumping into the middle. I apologize, Judge. Now, what's very strange about it, it looks as if Carhart is suing himself, right? Yes. Now, that's very odd. Extremely odd. Maybe you could explain to him how this came about, just very simply. Mr. Carhart essentially is suing himself, because what he ended up doing, there was a dealer, an independent dealer for Carhart, Alaska. And really all they do is they sell products mostly to tariffs. They buy it from China. They have it manufactured to certain specifications, and they sell it. So Mr. Carhart, after MRO sued, saying, you terminated me improperly, I'm owed money under Minnesota's independent dealer statute, he enters into an agreement with MRO, I'm going to buy your lawsuit. So he's still on the one side as Carhart, Alaska, LLC. He's still a member, and he's still a manager, but then he buys the lawsuit. And he buys the lawsuit before he resigns as a manager. That's how this comes about. And so he's on both sides, but he never makes an appearance. The caption has never changed to say Chris Carhart. All it is is it's MRO. And then once judgment, there's a stipulation because the receiver can't defend, he then steps in and there's an amendment, and now it's Chris Carhart is the one because it's been assigned. So that's the issue. And that issue is actually before Judge Voiland in Ozaukee County. So yes, he's suing both sides of the equation. His lawyers in Minnesota, when my client tried to file a third-party complaint, said we don't even need to get to the issues you've raised because all of that's really LLC stuff and there's a lawsuit in Wisconsin already. We're only dealing with whether MRO is owed money or not. That's it. And Judge Graham, who is the magistrate judge, agreed. So judgment is entered in Minnesota. They then turn around, bring the judgment to Wisconsin, and say we want to seize the only known other asset, which is the lawsuit the LLC had against Mr. Carhart and his entity. But the Alaska parties who you represent didn't seek to intervene in Wisconsin, right, before the court rendered its final order? That is correct. We did not seek to intervene. What we did do, though, is we found out after the motion had been, they brought a motion. So it wasn't a separate filed lawsuit naming parties. They brought a motion just to enforce the judgment. We found out from the receiver, correct. Right. And you didn't seek to intervene. Correct. I asked the court. We filed in that court. We did appear as a third party. Judge Statmuller raised that issue, and he specifically said, look, it's a two-person LLC. You're essentially taking the only asset. Yeah, the other member has a right to participate in this lawsuit. And that was, I believe, June 23rd, give or take, was the date that he ruled on that issue. But that goes to the heart of they raised standing, but when you look at the caption from the Eastern District, it's the caption from Minnesota. It just got transferred over here. They named all of the lawyers. The only lawyers, the only parties they didn't name were my clients, because when they sought to file their third-party complaint in Minnesota and raise these issues there, they were denied that right. So essentially, as I've argued, it's a stopple. They can't, on the one side, say, well, sure, you can go to Ozaukee County because it's there, and you shouldn't be in Minnesota. And then when that judgment gets transferred, well, now you can't participate. Either we participate or we don't participate. And all of those issues. And, again, I'm not suggesting, Judge Williams, that anything is improper. Mr. Carhart can buy the lawsuit. That's not the issue. That's not any sort of breach. He could say, hey, I've got money. I'm going to stop it from harming the corporation. The harm becomes when he turns around and he tries to enforce it against his very own LLC. And that issue was raised a few weeks, I believe, after the Minnesota lawsuit was filed in Ozaukee County. And the court in Minnesota said, all of those issues are going to be dealt with in Ozaukee County. So your position is that it was a breach of a fiduciary duty for him to try to enforce the judgment. Correct. And that issue has never been resolved. And that's the thing that I asked Judge Stattmuller, is stay it. Again, him buying the lawsuit is not the issue. It's the enforcement. But until the factual determination is made as to whether or not he breached, it was premature. Was Alaska aware that Carhartt was buying the claims? During the litigation, he became aware that Carhartt bought not before the lawsuit was filed in Minnesota and not before the Wisconsin lawsuit was filed, which I think was the lawsuit was filed in July in Minnesota, July of 12. Ozaukee was filed in October of 12. Did not have knowledge at that point. Subsequently, he did. But, again, buying the lawsuit doesn't do anything. It's when you turn around and try to do something with it. Well, I'm unclear about that because the lawsuit that he buys from MRO, it's a lawsuit against the LLC. Yes. So he buys it for $150,000. He thinks it's worth more, which is fine, as you say. But the only place he can get that money is from the LLC. Correct. And that's going to hurt Alaska. It is, Judge. But doesn't that mean that he couldn't do anything with his buying from MRO? That Carhartt couldn't do anything with it? Right. What could he do with it? Because he can only make back his $150,000 or more by suing the LLC, of which he's a partner. Well, what he could do, Judge, is, if you think about it, if there are, ignoring just this one asset, if there are more assets, in theory he's put himself ahead. If there's another $150,000 in assets, rather than being 75-75, he now owns a claim. So he says, I get a portion of whatever the LLC is worth. I get half, but I'm also a creditor, so I should get more when the dissolution occurs. That's not a breach of fiduciary duty. The breach becomes when he turns around and he goes after the LLC to enforce on that judgment, rather than just filing his claim in Ozaki County saying, I own this lawsuit. I stand ahead of you, Mr. Alaska, because I own this. To the extent there are no other creditors. That's really the distinction. Wait, I'm confused. So Carhartt is a creditor by virtue of his purchase of MRO's claim. Correct. But he's also a principal of the LLC. His corporation was a principal of the LLC. It's a one-person corporation, an Illinois corporation. So if you want to call that a distinction, I think it's a distinction without any difference, because he makes every decision on what that corporation does. So the LLC is owned by two corporations. Those corporations are owned by two individuals. They had a falling out. And so his enforcement would be, as we argue, should have been. I don't understand why the receiver fell out of this, because Carhartt, as you say, by virtue of the purchase of MRO's claim, he's a creditor. And isn't the purpose of the receivership to have all the creditors there, and the receiver decides how do you compensate the various creditors? Correct. The receiver fell out in Minnesota because there was no money. Because before he resigned as the manager, Mr. Carhartt controlled the money, the checking count. So he took all of the money out, so there's no money. And then when I deposed him, he admitted that, and that becomes the issue, he claims that he bought it individually, but he also says, well, my corporation was owed the money. So he takes it out, puts it into his corporation, and then uses that same money to buy it. Oh, his one-man corporation? I'm sorry? You mean his one-man corporation? His one-man, yes. Which was the partner in LLC, is that it? Correct. And so by taking it out, that is a question of whether he even had the right, because is that judgment that he purchased, is it a corporate asset if he used corporate funds? It has never been determined in Ozaukee County. And all I've asked is that there be a stay on the enforcement so that Judge Voiland can decide the issues, because both parties have moved for summary judgment up there. Issue is joined. There's a ton of litigation. Before you sit down, can I ask, if we disagree with your position and the judgment is enforced from the federal district court, wouldn't you still have all the remedies available to you in Ozaukee County? In what way would the remedies that are available to you through that state court proceeding inadequate to make you whole, assuming that you don't prevail here? It's inadequate because the receiver is then no longer able to participate, because the only thing the receiver had is the assets of the corporation. Mr. Carhart has seized those. My client, Chris Halaska, has individual claims, but the asset now is no longer owned. So essentially by buying the asset, he stops any lawsuit against himself. So now it's just Halaska suing as opposed to Halaska and the CHI, the LLC suing. That's the difference. He's basically cut out any other claim. And there are some claims that are just corporate claims as opposed to being claims that an individual might have. So by purchasing that, it's wiped everything out. Rather than the money coming back into the LLC and then being equally divided amongst the members after you pay off creditors, he's basically jumped in front of everybody. He's made himself a super creditor. So could you just explain again how it is that your client, not being a party to the lawsuit here, not having ever become a proper party, can appeal the adverse judgment? Well, Judge Williams, I actually do think that we are a party. As I indicated, we made an appearance. Because of the borrowing, you talked, because of the reference in terms of the caption. That is one way. And the other way is Judge Statmuller, the issue was raised, and he said they clearly have the ability to participate in this lawsuit. We weren't kicked out. And when Judge Statmuller, the issue became May 23rd, he issues an order saying any party that has an objection, well, we were never given notice of that because we weren't on the caption and we hadn't filed a notice of appearance and weren't there. He subsequently amended it to June 10 and said, okay, you have a short time period. Any party that objects, you have seven days to object. We objected within the seven days. The receiver objected within the seven days. Carhart objected saying they can't participate. And he said, that makes no sense. It's a two-member LLC. Of course he's got an interest because anything that goes to Carhart is taken away from him and from the Ozaukee County litigation. But is being able to participate the same thing as being a party? Is it enough for there to be just a statement on the record by the district judge that you are able to participate without any formal granting of a motion to intervene to actually make you a party? Because you can be harmed by an action and even perhaps have standing in the broader sense if you wanted to come in, but still not be a party to the case and then when it goes up on appeal still not have the ability to raise an appeal. I guess I'm wondering, is it just enough? Is it that the district judge actually said you're able to participate? Is that what you're hanging your hat on? That is one of the two things, yes. And then the fact that the third issue is we actually are listed in the docket as a party. So there's not a formal, you are granted some title, but we were listed as a third-party respondent I believe is what it's listed in the caption or in the docket. Third-party respondent? I believe that's what it says. Okay, thank you, Mr. Cade. Thank you. Mr. Bertocchi? Good morning, Your Honor. Joel Bertocchi on behalf of Chris Carhart. With respect to the court has indicated that the underlying case is complicated, but this appeal is not complicated. And there are a host of reasons for the court not to wade into the thicket that you were just talking about with Mr. Cade about who sued who. The first one is the party issue. The Alaska parties were not parties in Minnesota. They tried to become parties. Their motion to intervene was denied. They did not appeal that appealable denial. And so the case ended with them not being parties. At that point, a judgment was entered that Mr. Carhart had obtained. Mr. Cade says that it was okay for him to obtain the judgment. That's a big concession because a Rule 69 proceeding is supposed to be pretty ministerial. The big battle is supposed to be getting the judgment, not enforcing it. And that's the problem with most of Mr. Cade's arguments in this case with respect to the merits. They are all either one or both of two things. They're either arguments that could have been made in Minnesota but either weren't or were rejected and not appealed, or they're arguments that are being made or could be made in the Wisconsin state case. This goes to Judge Wood's last question. What are the remedies? Why aren't the remedies adequate in state court? The principal one that Mr. Cade cites is his request for a constructive trust. Now, a mere filing of a motion for a constructive trust or a mere filing of a motion in state court cannot stop a federal proceeding to enforce a judgment. But it's worth noting that if, and we don't concede this, but if the Alaska parties are entitled to that constructive trust, it can now be imposed on Mr. Carhartt because he owns the asset. In fact, you could argue that until the sale took place, he couldn't have gotten a constructive trust on Mr. Carhartt because  But now he does through the sheriff's sale. The two obstacles, I'm sorry, to getting to those merits are the fact that the Alaska parties did not seek to intervene and the fact that the case is, in fact, moot because the sale has taken place. Well, the judge, though, deems Alaska Party, right? No, he didn't, Your Honor. He allowed the Alaska parties to file things and he addressed the points that they filed. But Rule 24 specifically requires intervention to be in writing, to be a written motion. It's also required by Wisconsin local rule. I'm sorry. No, that was the state motion. It's required under Rule 24 that an intervention request be made in writing in order to become a party. And Marino v. Ortiz. He's listed as a party, apparently. Apparently it was assumed he was a party. Well, there's a little more to it than that. What difference does it make? Well, it makes a difference because Mr. Cade talked about in the state court proceeding, and it's in the record, he talked about knowing that he needed to intervene but thinking that he probably wasn't able to. So this is not imposing some crazy technical requirement. I don't understand, though. What difference does it make whether there's a formal motion to intervene? Well, that's one thing. That's what Rule 24 says. And it's also something that Mr. Cade was aware of. And I think he knew he made a written motion, or the Alaska parties made a written motion in Minnesota, so they knew they were supposed to. You can't just show up. That's what Rule 24 says. You can't just show up and start talking. I don't understand. What was Carhart doing here? I don't understand this. I mean, I understand buys the lawsuit, becomes a creditor. That's fine. But then remove the assets from the debtor? Your Honor, he didn't do that. The only asset of the company was these claims. There were no assets to remove, Your Honor. Well, he had his one-man corporation. Yes. He was a partner. He's one man. That must have had some. Did that have no assets, by the way? I don't know whether his own corporation had any. Look, he wouldn't pay $150,000 for MRO's claim against the LLC if he didn't think he could get more than that from the LLC. I don't think that's right, Your Honor. Why? What sense would it make? Mr. Carhart paid that money because he thought MRO had done the work and was owed the money. That's why he paid it. And he got their claims in exchange for that. What was he going to do with the claim? How was he going to get his $150,000 back? I don't think he ever thought he was going to. I think he thought they did the work and they ought to be paid. And the LLC was fighting, and he didn't think they should. So he paid the money they were owed. That's why he did it. So he's never tried to get it back? No. I don't know this, but I don't think he planned to, and I'm not aware that he's filed any kind of claim to try to get it back. He felt that the money was owed, so he paid them, and he got their claim in exchange. Now, Alaska didn't try to stay the judicial sale of the judgment debtor's assets, right? No, they did not. They asked Judge Stapmuller to stay the proceeding, and he didn't. But there was never a request to stay the sale of Judge Stapmuller. The sale went through. There was certainly never a request by this court to stay it, and that moots the appeal. Now, what was sold? What was sold were some claims that the LLC had that, and honestly I'm not sure I entirely know, but they were just claims in a state court case, and the receiver didn't contest the entry of the judgment. I'm sorry, I'm going to another issue. That's what was sold. State law claims. They're sitting there. Mr. Carhart, personally, and remember, Mr. Carhart was not a member of CHI. His company was, but Mr. Carhart owns the claims, and there they sit. They were claims against him, so he bought claims against him. He didn't buy them. He obtained claims against him by paying MRO what they were owed. Yes? Now, where are these assets? There are no assets. It's the claims. They're kind of inchoate, I guess, but Mr. Carhart owns them. He bought them at the sheriff's sale. Wait, you've lost me. Carhart has this MRO claim, right? Mr. Carhart has. Now, what assets are there of the LLC? None, except for the claims against Mr. Carhart, which is what he bought at the sheriff's sale. Mr. Carhart had MROs. Let me go back, because there's claims and claims. Mr. Carhart obtained MROs claims in Minnesota, got the judgment entered. The only asset against the LLC, the only assets of the LLC were the claims it had against Mr. Carhart. Those are different claims than the ones that were in Minnesota. I don't understand. If this is just eleemosynary, why did he get a judgment? Why didn't he just pay MRO and say, you know, we owe you this money, here it is? Why didn't it just go away? What's the judgment? The case had to be concluded. Wasn't there a settlement involved here? Wasn't the idea that there was a settlement and there was an amount owed pursuant to a settlement, and that's how it ended up? You know, I'm not sure I know the answer to your question, Your Honor. My understanding is that he, in exchange for paying MRO what they were claiming in the lawsuit, he bought their claim against the LLC. Why did he buy the claim? You say he paid MRO because he's a good guy and they owed the money, so he pays him. But he turns around and gets a judgment. Now, what's that about? If he got a judgment, he wanted money. Not necessarily. Oh, come on. Why would you get a judgment if you didn't intend to enforce it? Well, he did enforce it, Your Honor, and I think he did it. What do you mean enforce it? He's owed money. You say he doesn't want the money. Now you say he enforces the judgment. Well, I don't think there's any money in the company to pay him any part of it. But he wants it. He has a judgment. Yes. So why did you say before that he doesn't want any money? Because there isn't any money to want. That doesn't matter. You can be greedy and say I want the money. I don't know if there is any money, but I want it. I think he wanted the claims that were against him to be in his possession and thus essentially extinguished, and in order to do that, he had to get a judgment so he could buy the assets. There's value to that, too. I don't get it. He thinks that MRO is owed money. Yes. So he gives him $150,000, and you say he doesn't want anything back. I think he'd like it, but I don't think he expects to get it. Well, you didn't say that before. I'm sorry. You said he didn't want anything back. I apologize. Now you say he wanted a judgment. He wanted a judgment. He got a judgment. Yes. Now what assets could that judgment reach? There was only one asset of the company left, which was the company's claim against him. And there is value to someone in buying and obtaining control of claims against you. So that nobody else could go after him on the claim, because he's not going after himself. So then that kills the claim, essentially. I don't get that. He pays $150,000 to MRO. MRO gives him a release, you know, paid in full. Why does he need a judgment? Who's going to come after him? The company, the LLC, the receiver in the LLC were coming after him. Coming after him for paying a debt? No, no. There were other claims. So in other words, you're finally beginning to make a tiny bit of sense. He needs this judgment for $150,000 because he wants to fight with the LLC or with Alaska about possible claims they may have against him, unrelated to MRO, right? Yes. That's what we're talking about. Yes, the claims existed. At last. Yes. Okay. It's not charity. No. Well, I think he thought they were owed the money. It started charity. Now it's no longer charity. You said charity. No, not charity. He felt they were owed. He felt they were owed the money. Thank you. Okay. Thank you, Mr. Vitrocki. So, Mr. Cade? Yes, Judge. One point that was made that is incorrect. Alaska and Alaska International never moved to intervene in Minnesota. They moved to become third parties in that case, and that was denied. That's not something that is appealable as a matter of right when you're denied the motion to be a third party. So they keep saying, oh, they could have appealed. There was no appeal to take. And so that's different, though, from moving to intervene? No, in Minnesota. That's what it's called, to be a third party, is the same as moving to intervene? It operates the same, Judge Williams. But what they did is they said, hey, we've got similar claims, and they asked to become third parties to assert third party claims against Mr. Carhart. But there was the ability to move to intervene. So you could go about it two ways, move to intervene or move to be a third party. The request to be a third party was rejected. Correct. And the basis for going through the denial was essentially when they gave that decision, it was the chief judge, I believe, said all of this stuff. It was essentially saying it would be permissive intervention, not mandatory. And all of those claims are already being litigated in Ozaukee County, so we're denying it because otherwise it becomes duplicative. The other point that I did want to make is Mr. Pataki said that, well, there really are no other assets. That's not true. There is an accounting. Because, again, remember, before he bought MRO's claim, he takes all of the money out of the corporation. We've never gotten accounting. But this business was doing $25 million in terms of receipts. So that's a lot of money. There was a demand for an accounting because he would owe half of it. So the way to short circuit that is I'm going to pay. And he didn't pay $150,000. The claim was $150,000. He paid less than that. When I deposed him, he could never give a straight answer in terms of the amount that he paid. He thinks it was between $80,000 and $90,000. And, importantly, while he thinks the money was owed, there was a dispute between the two partners. They could not agree as to whether to fight the claim or not. So, in fact, if you look at the docket from the District Court of Minnesota, the original lawyer was from a Milwaukee firm, Von Briesen. They had to withdraw because now you've got partners who are at odds, and they have no direction on what to do. So they withdrew. So Mr. Carhart says, okay, I'll buy that claim, forces out the one set of lawyers, gets it at a discount, and then turns around and wants to seek the judgment. It's not for charity. It's because he knows there's a lot more money. So Halaska didn't move to intervene in the district court? In Minnesota? No, here, in Wisconsin. In Wisconsin, no, did not formally move to intervene. The judge's order said any party that has a claim or an objection, I should say, is to file something by June 17th of 2014, which Mr. Halaska did. And then the issue was raised, well, you should intervene. And the court says, no, that doesn't make any sense. They're a partner. It's half their asset, depending on how this goes. They have every right to be here in this court. So the district court said there was no reason to intervene? So that's what you're relying on? I'm paraphrasing the words because I don't have the exact. It's the order from June 23rd, which is part of the appendix. But essentially he says it makes no sense that Halaska cannot be here because he's a partner and essentially it's half his asset. So, yes, he can. So you're saying he really was treating Halaska as a party rather than as someone with an interest that might justify intervention? Correct, Judge. And I think that the overriding point is if the asset, if the claim was bought with company money, not Mr. Carhart's individual money, but company money, then that is an asset that should have been disclosed to the receiver because they need to know about it. Then Mr. Carhart never owned it. It would be the LLC owned it. And the LLC can't have a claim and sue itself. They're doing this distinction, well, Mr. Carhart is an individual. Yeah, because if it really is a company's asset, there would have been no jurisdiction in Minnesota. And so if we just turn around and say, you know what, rather than going through the thicket of all of this, it's in Ozaukee County, every single issue. Let's just stay this and tell Judge Voiland, let us know what decision you make. And that's where it becomes enforced from. Okay, well, thank you very much. Thank you for your time.